IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BENNETT JLR LLC,<br>5254 Tilghman Street<br>Allentown, Pennsylvania 18104<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JOHN VARGHESE,<br>996 Primrose Avenue<br>Stroudsburg, Pennsylvania  18360<br><br>　　　　　　Defendant. | Civ. A. No: 5:21-cv-05659 |

## **COMPLAINT**

Bennett JLR LLC d/b/a as Bennett Automotive Group ("Bennett," the "Company," or "Plaintiff"), by and through its undersigned counsel, asserts the following Complaint against Defendant John Varghese ("Varghese" or "Defendant").

## **PRELIMINARY STATEMENT**

1.  This is a straight-forward action triggered by Varghese's misappropriation of Bennett's trade secrets and confidential information for his own personal gain.  As a salesperson for Bennett, an auto dealership, Varghese was entrusted with Bennett's trade secrets and confidential information, including, relevantly, customer information.  Varghese resigned his employment with Bennett to accept employment as a salesperson with the Piazza Group's Jaguar Land Rover Willow Grove ("Piazza Group") dealership, a nearby competitor of Bennett's.  Rather than be content to compete fairly with his former employer, Varghese misappropriated from Bennett hundreds of Bennett customers' contact information and proceeded to use that contact information in mass email solicitations of Bennett customers in which he also disparaged and

9807841.v3

spread false information about Bennett. Bennett understands that Varghese had separate communications in which he continued to disparage Bennett by intimating that he had inside information that Bennett's business was failing. Bennett further understands that Varghese even went so far as to attempt to have a Bennett customer withdraw a deposit that the customer placed with Bennett so that the customer could transfer that deposit to Piazza to purchase the same vehicle there. Tellingly, Varghese has ignored Bennett's multiple efforts to engage with him and understand the scope of his misconduct. Therefore, Bennett has no choice but to initiate this litigation to recover damages incurred from Varghese's unlawful activity, curb Varghese's ability to further harm Bennett, and ascertain the full scope of Varghese's misconduct.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 29 U.S.C. § 1331, as Bennett's claim pursuant to the Defend Trade Secret Act ("DTSA"), 18 U.S.C. § 1832, *et seq.*, arises under a law of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to this action and upon which the allegations in the Complaint are based occurred within this District.

## PARTIES

4. Plaintiff is a Pennsylvania limited liability company with a principal place of business at 5254 Tilghman Street, Allentown, Pennsylvania 18104.

5. Varghese is an individual and a citizen of the Commonwealth of Pennsylvania with a last known address of 996 Primrose Avenue, Stroudsburg, Pennsylvania 18360.

## FACTUAL ALLEGATIONS

**A.   Bennett's Trade Secrets and Efforts to Protect Them**

6. Bennett is a car dealer of Jaguar and Land Rovers, with a hard-earned reputation for treating customers fairly and well.

7. Bennett takes great pride in its customer relationships and, through sales personnel such as Varghese, getting to understand its customers' needs and preferences so that those customers continue to look to Bennett for their automotive needs.

8. The identities, contact information, and preferences of Bennett customers are valuable information which have been developed and cultivated by Bennett over time and considerable expense.

9. By way of exemple, Bennett has spent hundreds of thousands of dollars cultivating its reputation within the community as a quality dealership from whom customers should have confidence and comfort fulfilling its automotive needs. By way of another example, Bennett has invested in computer systems and information technology that allows it to maintain the identities of its customers and related information in a safe and secure platform. By way of another example, Bennett invests in and compensates its sales representatives to develop relationships with customers in an effort to know their needs and assist Bennett in meeting those needs.

10. As Bennett's customers are such an integral part of its success, Bennett takes reasonable and appropriate steps to protect its trade secrets and confidential information, including – relevantly - customer-related confidential information such as customer contact information and preferences (the "Trade Secrets").

11. Understanding the value of its Trade Secrets, Bennett takes appropriate and reasonable steps to safeguard them from public disclosure.

12. First, Bennett does not publicize its Trade Secrets, including the identities of its customers, their contact information, or preferences. Indeed, Bennett customer information is

restricted to Bennett employees who have a need to know that information. This information is not made available to third-parties nor is it ascertainable through public information, and is certainly not shared with competitors.

13.     Second, Bennett instructs its employees on the importance of maintaining confidentiality with respect to its Trade Secrets and has put in place appropriate policies to that end. In addition to management verbally emphasizing the importance of confidentiality, Bennett maintains an Employee Handbook which contains relevant policies. Specifically, the Employee Handbook explains that Bennett's "confidential business information and trade secrets" includes "Customer Lists" and "Customer Preferences." The Handbook further provides that "[c]onfidential information regarding the company or the customers we serve should in no way be divulged verbally, in written correspondence or e-mail." The Handbook also provides that "Employees may not send or upload Company copyrighted materials, trade secrets, proprietary information, or similar materials to third parties." Varghese, during his employment with Bennett, acknowledged receipt of the Handbook and agreed to be bound by its policies.

14.     Third, Bennett maintains Trade Secrets on its computer systems which are password protected and which are contained on Bennett's property which is secured and locked when not open.

15.     In sum, as to all its employees, Bennett maintains reasonable and appropriate steps to protect its Trade Secrets.

16.     In addition, specific to Varghese, shortly before his resignation from Bennett, Varghese was reminded explicitly that customer information is a Bennett Trade Secret to be treated confidentially. Specifically, on or about June 25, 2021, Varghese was issued a Written Warning for an issue he had with a customer. In the Written Warning, in relevant part, Bennett reminded

Varghese that "[a]ll customers are the property of the Bennett organization and considered confidential information. This information must remain [in] the custody of the Bennett organization. This includes but is not limited to customer list, phone numbers, addresses and any other personal information[.]" A true and correct copy of the June 25, 2021 Written Warning is attached as Exhibit A.

17. Thus, there can be no doubt that Varghese was well aware of his obligation to maintain the confidentiality of Bennett's Trade Secrets, that customer information was highly valued, protected information that constituted a Trade Secret, and that Bennett took appropriate and reasonable steps to protect its Trade Secrets.

**B.     Varghese Steals Bennett's Trade Secrets and Uses Them to Poach Customers**

18. Bennett employed Varghese as a sales representative.

19. As a sales employee, Varghese was exposed to Bennett's Trade Secrets, including customer information, and was expected to utilize that information solely for the benefit of Bennett in connection with the performance of his job duties.

20. In the performance of his job duties for Bennett, Varghese in particular received access to and knowledge of Bennett's customer-related Trade Secrets, as he was expected to serve as the "face" of Bennett to the customers that he serviced.

21. In the performance of his job duties for Bennett, Varghese was not expected to recruit potential customers from the public but instead to service and strengthen relationships with customers and prospective customers who came to Bennett as a result of Bennett's reputation and external marketing efforts.

22. Varghese understood and acknowledged the importance of maintaining the confidentiality of Bennett's Trade Secrets, including its customer information.

23. On July 17, 2021, Varghese resigned his employment with Bennett.

24. Upon information and belief, at the time Varghese resigned his employment, he had already accepted employment with Piazza Group to be a a sales representative for that dealership.

25. Upon information and belief, prior to resigning his employment, Varghese understood that he could benefit from misappropriating Bennett's Trade Secrets, including customer information, and using those Trade Secrets for his benefit and the benefit of a subsequent employer.

26. Prior to his separation from Bennett, Varghese misappropriated Bennett Trade Secrets, including, at minimum, the identities of hundreds of customers and their contact information.

27. Varghese knew that he had no right to possess Bennett's customer names and contact information after his employment with Bennett. Varghes had no legitimate purpose in retaining Bennett's customer names and contact information.

28. Varghese did not seek permission from Bennett in retaining its customer information, as he undoubtedly knew that such permission would not be granted.

29. In less than a month after resigning his employment with Bennett and commencing employment with Piazza, Varghese used Bennett's Trade Secrets for his own benefit and to harm Bennett.

30. On August 2, 2021, from his Piazza-issued email address, Varghese sent a solicitation email to hundreds of Bennett customers (the "Solicitation Email"). The Solicitation Email stated:

>   Hello to all my Land Rover Customer,

> I have been with the Bennett Automotive Group for the last 10yrs and provided my best services to 100s of my customers. It's with much sorrow I've decided to move to Land Rover Willow Grove. I believe this move would be the best for my customers and myself due to the detreating atmosphere in the work place. I believe Land Rover Willow Grove provides a great place to work and the most outstanding service for my customers. I was hoping to bring over most of my customer to Land Rover Willow Grove for their sales and services, I know you will be pleasantly surprised. This place is fully staffed to provide the "MAX SERVICES" and best working atmosphere.

A true and correct copy of the Solicitation Email is attached as Exhibit B.[1]

31. Varghese did not know the identify of these Bennett customers or their contact information independent of his employment with Bennett.

32. Given the hundreds of Bennett customers who received the Solicitaiton Email, Varghese plainly retained Bennett customer contact information upon his separation from Bennett.

33. Upon information and belief, Piazza did not know the identifty of these Bennett customers or their contact information independent of being provided it by Varghese.

34. Varghese received responses from Bennett customers in response to his Solicitation Email.

35. In at least one subsequent communication with a Bennett Customer, Varghese encouraged the customer to have his car serviced at Piazza rather than Bennett.

36. Upon information and belief, Varghese had additional communications with Bennett customers using Bennett Trade Secrets to contact the customers.

37. Varghese's disregard of his obligations to Bennett did not end with the Solicitation Email and follow-up communications. Varghese, upon information and belief, interfered with Bennett's contract with a customer. Bennett understands that Varghese sought to persuade a

---

[1] Varghese sent multiple emails to groups of Bennett customers, which are attached to Exhibit B. As this contact information is a Bennett trade secret, and to the protect the identities of Bennett's customers, their email address are redacted.

7

Bennett customer who had already placed a deposit with Bennett to purchase a vehicle to seek a return of that deposit so that Varghese could sell the customer the same vehicle on behalf of Piazza.

38.     Varghese had no legitimate purpose to interfere with the Bennett's customer's contract or propspective contractual arrangement with Bennett to purchase the vehicle.  Moreover, Varghese would have no knowledge of the contract between Bennett and the customer but for Trade Secrets shared with him while employed by Bennett in connection with the performance of his job duties for Bennett.  Thus, Varghese was utilizing additional Bennett Trade Secrets to tortiously interfere with Bennett's customer contract and prospective contractual arrangement.

39.     Upon information and belief, Varghese utilized Bennett Trade Secrets to secure sales for Piazza from customers who otherwise would have purchased vehicles from Bennett. Varghese received commissions forthese sales.

40.     Upon information and belief, Varghese also told third-parties that Bennett was likely going to lose its dealership rights and was otherwise going out of business.  Varghese issued false and disparaging statements to harm Bennett.  In making these false and derogatory statements, Varghese either explicitly or implicitly indicated to the third-party that his purported knowledge was based on Bennett Trade Secrets known to him by virtue of his employmentat Bennett.  These communications were false, malicious, and issued with no legitimate purpose other than to cause harm to Bennett.

41.     Although Bennett's investigation is ongoing and, as explained below, stymied by Varghese's refusal to respond to several communications, it is clear that Varghese engaged in a post-employment campaign against Bennett using Bennett Trade Secrets.

### C. Varghese Ignores Bennett's Efforts to Ascertain the Scope of His Misconduct, Necessitating Commencement of This Action.

42. In response to the Solicitation Email, Bennett took prompt action to attempt to limit the damage caused by Varghese's misappropriation of its Customer information.

43. On or about August 6, 2021, Bennett, through counsel, sent Varghese a letter via Certified Mail (the "August 6 Letter"). The August 6 Letter, in part, stated:

> ***Confidential customer lists are trade secrets that cannot be lawfully used for solicitation by a former employee. Accordingly, you are hereby directed to CEASE and DESIST in making or causing, whether directly or indirectly, any further contact with our client's customers. To the extent any such list is in your possession, it must be immediately returned to our client and not used or disclosed to any other party. No copy may be retained by you.***

A true and correct copy of the August 6 Letter is attached at Exhibit C. (emphasis in original).

44. Varghese never provided a response to the August 6 Letter.

45. Upon information and belief, Varghese took no action in response to the August 6 Letter, including failing to take any step to minimize the benefit he received from his misappropriation of Bennett's Trade Secrets.

46. On November 3, 2021, Bennett, via counsel, sent Varghese another letter regarding his unlawful conduct (the "November 3 Letter"). A true and correct copy of the November 3 Letter is attached at Exhibit D.

47. In the November 3 Letter, Bennett sought information and assurances from Varghese related to his Trade Secret misappropriation. Among other requests, Bennett asked Varghese to: 1) identify all Bennett Trade Secret information in his possession; 2) identify the entirety of his post-employment use of Bennett Trade Secret information; 3) identify communications with Bennett customers; and 4) affirm his commitment not to disclose or use Bennett's Trade Secrets.

9

48. As of this filing, Bennett has received no response from Varghese to any of its letters or otherwise.

49. Upon information and belief, Bennett has lost sales and other opportunities with its Customers as a result of Varghese's unlawful conduct.

50. Upon information and belief, absent relief from the Court, Varghese will continue to utilize Bennett Trade Secrets and otherwise improperly interfere with Bennett's business.

51. Bennett, accordingly, initiates this action to protect its rights from further violation by Varghese and to recover from the harm already inflicted by him.

## COUNT I
## <u>MISAPPROPRIATION OF TRADE SECRETS – 18 U.S.C. § 1832, *et seq.*</u>

52. The preceding allegations are incorporated by reference as if fully set forth herein.

53. Varghese has misappropriated Bennett's trade secrets and confidential information without the express or implied consent of Bennett.

54. Varghese, while an employee of Bennett, accessed and obtained Bennett trade secrets and confidential information and utilized them to solicit Bennett's customers.

55. Bennett has expended substantial resources in developing its trade secrets and confidential information for its exclusive use and benefit. Bennett's trade secrets and confidential information derive economic value from the fact that they are neither generally known nor readily ascertainable by proper means by any third parties.

56. Bennett does not disclose its trade secrets or confidential information to its competitors and has made reasonable efforts to protect their confidentiality.

57. Varghese obtained Bennett's trade secrets and confidential information and utilized it for his own benefit and to Bennett's detriminet.

58. Upon information and belief, Varghese has and intends to continue to use Bennett's trade secrets and confidential information to compete with Bennett and/or to interfere with its client relationships.

59. As a direct and proximate result of Varghese's misappropriation of trade secrets, Bennett has suffered, and will continue to suffer substantial damages, the precise amount of which will be determined at trial.

60. Varghese's conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Bennett.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS - 12 Pa.C.S.A. § 5302, *et seq.*

61. The preceding allegations are incorporated by reference as if fully set forth herein.

62. Varghese has misappropriated Bennett's trade secrets and confidential information without the express or implied consent of Bennett.

63. Varghese, while an employee of Bennett, accessed and obtained Bennett trade secrets and confidential information and utilized them to solicit Bennett's customers.

64. Bennett has expended substantial resources in developing its trade secrets and confidential information for its exclusive use and benefit. Bennett's trade secrets and confidential information derive economic value from the fact that they are neither generally known nor readily ascertainable by proper means by any third parties.

65. Bennett does not disclose its trade secrets or confidential information to its competitors and has made reasonable efforts to protect their confidentiality.

66. Varghese obtained Bennett's trade secrets and confidential information and utilized it for his own benefit and to Bennett's detriment.

67. Upon information and belief, Varghese has and intends to continue to use Bennett's trade secrets and confidential information to compete with Bennett and/or to interfere with its client relationships.

68. As a direct and proximate result of Varghese's misappropriation of trade secrets, Bennett has suffered, and will continue to suffer substantial damages, the precise amount of which will be determined at trial.

69. Varghese's conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Bennett.

## COUNT III
## BREACH OF FIDUCIARY DUTY

70. The preceding allegations are incorporated by reference as if fully set forth herein.

71. At all times prior to his employment termination, Varghese was an agent of Bennett.

72. As an agent of Bennett, Varghese owed Bennett a fiduciary duty.

73. Varghese, through his actions as set forth herein, intentionally and willfully violated his fiduciary duties to Bennett by taking actions against Bennett's interest while employed by Bennett, including, but not limited to, misappropriating Bennett's Trade Secrets for his personal gain.

74. As a direct and proximate result of Varghese's acts and omissions, Bennett has suffered substantial damages and will continue to suffer substantial damages.

75. Varghese's conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Bennett.

## COUNT IV
## BREACH OF DUTY OF LOYALTY

76. The preceding allegations are incorporated by reference as if fully set forth herein.

77. At all times prior to his employment termination, Varghese was an employee and agent of Bennett.

78. As an agent of Bennett, Varghese owed Bennett a duty of loyalty.

79. Varghese, through his actions as set forth herein, intentionally and willfully violated his duties of loyalty to Bennett by taking actions directly and undeniably contrary to Bennett's interests while employed by Bennett, including, but not limited to, misappropriating Bennett's Trade Secrets for his personal gain.

80. As a direct and proximate result of Varhese's acts and omissions, Bennett has suffered substantial damages.

81. Varghese's conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Bennett.

## COUNT V
## CONVERSION

82. The preceding allegations are incorporated by reference as if fully set forth herein.

83. At all times, Bennett retained all right, title, and interest in the confidential information, trade secrets, and other information taken by Varghese.

84. Varghese knowingly, dishonestly, and intentionally took and retained Bennett's confidential information, trade secrets, and other information without authorization.

85. Varghese's acts constitute a knowing, unlawful and intentional conversion of trade secrets and information for his economic benefit and to the economic detriment of Bennett.

86. Varghese has refused Bennett's demands to return the confidential information, trade secrets, and other Bennett property that he illegitimately took.

87. Varghese has taken this confidential information, trade secrets, and other Bennett property for his own use and/or the benefit of a third-party unauthorized by Bennett to use this information.

88. As a direct and proximate result of this conversion, Bennett has suffered substantial damages and will continue to suffer substantial damages.

89. Varghese's conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Bennett.

## COUNT VI
## UNJUST ENRICHMENT

90. The preceding allegations are incorporated by reference as if fully set forth herein.

91. Through his misappropriation of trade secrets and confidential information and trade secrets, Varghese received a benefit from Bennett, *i.e.*, Bennett's property, to which Varghese was not entitled.

92. Varghese has improperly, and without consent by Bennett, retained and utilized Bennett's property.

93. Varghese had, and has, no legitimate entitlement to Bennett's property.

94. Upon information and belief, Varghese has continued to use the ill-gotten property for his own benefit.

95. Varghese has refused Bennett's demands to return the trade secrets, confidential information.

96. The taking and retention of this benefit is both inequitable and unjust.

97. As a direct and proximate result of Varghese's unjust enrichment, Bennett has suffered substantial damages and will continue to suffer substantial damages.

98. Varghese's conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Bennett.

## COUNT VII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

99. The preceding allegations are incorporated by reference as if fully set forth herein.

100. Bennett's customers regularly returned to Bennett to upgrade or purchase new vehicles.

101. Varghese knows about Bennett's repeat customers as well as their preferences.

102. Upon information and belief, Varghese used his knowledge of Bennett's confidential information and trade secrets, including client good will, to undermine Bennett's business relationship with its clients.

103. Varghese thereby wrongfully interfered with Bennett's existing and prospective business relationships, thereby causing damages to Bennett.

104. Varghese's wrongful actions were not privileged.

105. Varghese's conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Bennett.

## COUNT VII
## TORTIOUS INTERFERENCE WITH CONTRACT

106. The preceding allegations are incorporated by reference as if fully set forth herein.

107. Bennett entered into a contact with a customer to sell the customer a vehicle. The customer paid Bennett a deposit in connection with this transaction.

108. Upon information and belief, Varghese knew of this customer and his transaction with Bennett by virtue of the confidential information he gained during his employment with Bennett.

109. Upon information and belief, after his separation from Bennett and commencement of employment with Piazza, Varghese utilized his knowledge of Bennett confidential information to attempt to interfere with the customer's contract and relationship with Bennett.

110. Upon information and belief, Varghese attempted to persuade the customer to withdraw his deposit from Bennett, and purchase the same vehicle from Piazza.

111. Varghese thereby wrongfully interfered with Bennett's contract and relationship with this customer, thereby causing damages to Bennett.

112. Varghese's wrongful actions were not privileged.

113. Varghese's conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Bennett.

## PRAYER FOR RELIEF

WHEREFORE, Bennett1, respectfully requests the following relief:

1. Varghese be enjoined from using or presenting any of Bennett's trade secrets or confidential information to any party other than Bennett;

      2.      Varghese be directed to immediately return to Bennett all Bennett documents and information;

      3.      Varghese be directed to pay actual damages, compensatory damages, punitive damages, pre-judgment interest, and post-judgment interest in an amount to be determined at trial;

      4.      Varghese be directed to pay Bennett's reasonable attorneys' fees and costs; and

      5.      This Court order such other and further relief as it deems appropriate.

Respectfully submitted,

Date:  December 30, 2021

*/s/ Gregory R. Sellers*
Jonathan S. Krause
Gregory R. Sellers
KLEHR HARRISON
HARVEY BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA  19103
ph (215) 569-4496/4095
fax (215) 568-6603
jkrause@klehr.com
gsellers@klehr.com

*Counsel for Plaintiff*

9807841.v3